FILED

**UNITED STATES DISTRICT COURT** 2017 JUL 18  PM 3: 02
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

PAUL and JOHANNA FREEMAN,
individuals,

Case No.: 6:17 -CV -1324-ORL-41-KRS

  Plaintiffs,

v.

DITECH FINANCIAL, LLC, f/k/a
GREEN TREE SERVICING, LLC,
a foreign limited liability company,

  Defendant.

_____/

### VERIFIED COMPLAINT

**COME NOW**, Plaintiffs, PAUL (hereinafter, "Mr. Freeman") and JOHANNA
(hereinafter, "Mrs. Freeman") FREEMAN (hereinafter collectively, "Plaintiffs"), by and through
the undersigned counsel, and hereby sue Defendant, DITECH FINANCIAL, LLC f/k/a GREEN
TREE SERVICING, LLC (hereinafter, "Defendant"). In support thereof, Plaintiffs state:

### PRELIMINARY STATEMENT

1.      This is an action for damages brought by individual consumers for Defendant's
violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes
(hereinafter, the "FCCPA"), the Telephone Consumer Protection Act, 47 United States Code,
Section 227 (hereinafter, the "TCPA"), and for declaratory judgment and injunctive relief in
equity.

2.      Specifically, this is an action for Defendant's unlawful attempts to collect a
consumer debt from Plaintiffs despite Defendant possessing knowledge that Plaintiffs' Bankruptcy
Case and Automatic Stay, as referenced and defined below, prohibited Defendant from attempting
to collect the debt directly from Plaintiffs.

1

3.     Additionally, this is an action for Defendant's calls made to Plaintiffs' cellular telephones using an automatic telephone dialing system, a predictive telephone dialing system, or an artificial or pre-recorded voice, despite Defendant lacking Plaintiffs' consent to make such calls to their cellular telephones.

## JURISDICTION, VENUE & PARTIES

4.     Jurisdiction of the Court arises under 47 United States Code, Section 227(b)(3), 28 United States Code, Section 1337, and supplemental jurisdiction exists for the FCCPA claims pursuant to 28 United States Code, Section 1367.  Declaratory relief is available pursuant to 28 United States Code, Sections 2201 and 2202.

5.     Defendant is subject to the jurisdiction of this Court as Defendant regularly transacts business in this District and the events described herein occur in this District.

6.     Venue in this District is proper because Defendant transacts business in this District, and the conduct complained of occurred in this District.

7.     At all material times herein, the conduct of Defendant, complained of below, occurs in Volusia County, Florida.

8.     At all material times herein, Plaintiffs are individuals residing in Volusia County, Florida.

9.     At all material times herein, Defendant is a foreign limited liability company engaged in business in Florida with its principal place of business located at 3000 Bayport Drive, Suite 880, Tampa, Florida 33607.

## FCCPA STATUTORY STRUCTURE

10.     The FCCPA is a state consumer protection statute, modeled after the federal Fair Debt Collection Practices Act, a statute designed to prohibit unfair, deceptive, and abusive

practices in collection of consumer debts as well as to protect against the invasion of individual privacy. 15 U.S.C., §1692(a) and (e); Fla. Stat., §§559.55 and 559.77(5).

11.    The FCCPA imposes civil liability on a creditor that "offers or extends credit creating a debt or to whom a debt is owed . . ." and prohibits any person from engaging in particular conduct in connection with collecting consumer debts.  *Id.* at §559.55(5).

12.    Specifically, the FCCPA prohibits unlawful debt collection "communications" with consumer debtors, which is defined as "the conveying of information regarding a debt *directly or indirectly* to any person *through any medium*" (emphasis added).  *Id.* at §559.55(2).

13.    For example, the FCCPA prohibits a person from collecting consumer debt by communicating with the consumer in a manner that can be expected to harass or abuse the consumer debtor, and also prohibits a person from claiming, attempting, or threatening to enforce a consumer debt "when such person knows that the debt is not legitimate" or by asserting a legal right that does not exist.  *See Id.* at §§559.72(7) and 559.72(9).

## TCPA STATUTORY STRUCTURE

14.    Congress enacted the TCPA in effort to restrict pervasive use of telemarketing and increasing use of cost-effective telemarketing techniques.  Pub L. 102-243, § 2, Dec. 20, 1991, 105 Sta. 2394 (1) and (8).

15.    Congress found that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy…" and it intended to prevent automated or pre-recorded telephone calls as "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* at (5) and (12).

16.    Under the TCPA, any person who initiates calls to any number assigned to a cellular telephone service using any automated telephone dialing system or artificial or prerecorded voice

without the recipient's prior express consent is liable to the recipient for actual monetary loss, or up to $500.00 in damages for each violation of the TCPA, whichever is greater.  47 U.S.C. § 227(b)(3)(B).

17.     Additionally, under the TCPA, the court may increase the damage award up to three (3) times, up to $1,500.00, for each willful or knowing violation of the TCPA.  *Id.* at § 227(b)(3)(C).

## GENERAL ALLEGATIONS

18.     At all material times herein, Defendant is a "creditor" as defined by Florida Statutes, Section 559.55(5).

19.     At all material times herein, Plaintiffs are "debtors" or "consumers" as defined by Florida Statutes, Section 559.55(8).

20.     At all material times herein, Defendant attempts to collect a debt, specifically a balance on a consumer mortgage loan, referenced by account number ending in -2549 (hereinafter, the "Debt").

21.     At all material times herein, the Debt is a consumer debt, a result of a transaction for goods or services, incurred primarily for personal, household, or family use.

22.     At all material times herein, Defendant is a "person" subject to Florida Statutes, Section 559.72.  *See* Fla. Stat. § 559.55(5); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

23.     At all material times herein, Defendant's conduct, with regard to the Debt complained of below—including furnishing information regarding the Debt to consumer credit reporting agencies—qualifies as "communication" as defined by Fla. Stat., §559.55(2).

24.    Specifically, at all material times herein, Defendant furnished information concerning the Discharged Debt to the credit reporting agencies in a knowing attempt to extract and collect payment from Plaintiffs.[1]

25.    Defendant furnishes, reports, and publishes specific details of consumers alleged outstanding or delinquent debt accounts to compel or coerce the debtor to either satisfy the alleged balance or suffer the consequences of delinquent accounts, such as higher interest rates on consumer loans or complete denial of credit.

26.    At all material times herein, Defendant acts itself or through its agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

27.    All necessary conditions precedent to the filing of this action occurred or Defendant waived the same.

## FACTUAL ALLEGATIONS

28.    Defendant made telephone calls, as more specifically alleged below, to Mr. Freeman's cellular telephone number 386.XXX.6038 (hereinafter, "Mr. Freeman's Cellular Telephone) and Mrs. Freeman's cellular telephone number 386.XXX.5120 (hereinafter, "Mrs. Freeman's Cellular Telephone) (hereinafter collectively, the "Cellular Telephones") using an

---

[1] *See Arianas v. LVNV Funding*, 2015 WL 404238, Case No. 8:14-cv-01531-T-27-EAJ (M.D. Fla. Jan. 8, 2015) (noting that while furnishing information to a consumer credit bureau alone cannot constitute an attempt to collect a debt in violation of the FCCPA as such violation is preempted by the FCRA, a creditor that "knowingly [attempts] to enforce payment on accounts" by reporting the debt to a consumer reporting agency *can* engage in unlawful debt collection in violation of the FCCPA—not preempted by the FCRA—even without any additional collection attempts) (emphasis added); *see also Best v. Bluegreen Corporation*, 2014 WL 6883083, Case No. 14-80929-CIV (S.D. Fla. Dec. 4, 2014); *In re Russell*, 378 B.R. 735, 743 (Bankr. E.D.N.Y. 2007); *Matter of Sommersdorf*, 139 B.R. 700, 701 (Bankr. S.D. Ohio 1991); and *Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993) (a creditor's report of a debt to a consumer reporting agency is a "powerful tool, designed in part to wrench compliance with payment terms from its cardholder").

automatic telephone dialing system (hereinafter, "ATDS"), a predictive telephone dialing system (hereinafter, "PTDS"), or an artificial or pre-recorded voice (hereinafter, "APV").

29.     Mr. Freeman is the owner, regular user, and possessor of a Cellular Telephone with the assigned number 386.XXX.6038.

30.     Mrs. Freeman is the owner, regular user, and possessor of a Cellular Telephone with the assigned number 386.XXX.5120.

31.     At no time herein did Defendant possess Plaintiffs' prior express consent to make calls to Plaintiffs' Cellular Telephones using an ATDS, a PTDS, or an APV.

32.     Further, if Defendant contends it possessed such consent, Plaintiffs revoked any consent the moment Defendant received notice of Plaintiffs' Bankruptcy Case and the resulting Automatic Stay (as that term is defined herein).

33.     Additionally, if Defendant contends it made the below-referenced phone calls for "informational purposes only," Defendant nevertheless lacked the required prior express written consent necessary to make such informational calls to Plaintiffs' Cellular Telephones using an ATDS, a PTDS, or an APV.

34.     On or about November 30, 2014, Plaintiffs filed a Chapter 7 Voluntary Bankruptcy Petition in the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, referenced by case number 6:14-bk-13069-CCJ (hereinafter, "Bankruptcy Case"). Please see a true and correct copy of the Bankruptcy Docket, labeled as Exhibit "A."

35.     Plaintiffs listed Defendant as a secured creditor in Schedule D of Plaintiffs' Bankruptcy Case.  Please see a true and correct copy of the relevant page of Plaintiffs' Schedule D and creditor matrix labeled as Exhibit "B."

36.     On or about June 11, 2015, the Bankruptcy Court entered an Order converting Plaintiffs' Bankruptcy Case to a Chapter 13, and sent a Notice of Conversion of Case to Chapter 13 to all creditors.  *See* Ex. "A" at p. 7.

37.     On or about July 30, 2015, the *Section 341 Meeting of Creditors* was held.  *See* Ex. "A" at p. 12.

38.     Pursuant to 11 United States Code, Section 362, an automatic stay is entered upon filing of a Bankruptcy Case which prohibits creditors from taking certain collection actions against debtors and co-debtors, including but not limited to contacting a debtor by telephone, mail or otherwise to demand repayment and taking action to collect money or obtain property from the debtor (hereinafter, "Automatic Stay").

39.     On or about September 15, 2015, Defendant filed an *Objection to Confirmation of Plan* in Plaintiffs' Bankruptcy Case.  Please see a true and correct copy of said Objection labeled as Exhibit "C."

40.     Defendant's immediately-aforementioned *Objection to Confirmation of Plan* demonstrates Defendant's actual knowledge of Plaintiffs' Bankruptcy Case and Automatic Stay, actual knowledge of Plaintiffs' legal representation with respect to the Debt, and actual knowledge of Plaintiffs' legal representation's contact information.

41.     Defendant has an affirmative duty to cease collection activity on the Debt after possessing actual knowledge of the Bankruptcy Case and the Automatic Stay.  *See In Re Mims*, 209 B.R. 746 (Bankr. M.D. Fla. June 23, 1997); *In Re Taylor*, 190 B.R. 459 (Bankr. S.D. Fla. Dec. 8, 1995).

42.     On or about January 12, 2016, the United States Bankruptcy Court entered an *Amended Order Confirming Chapter 13 Plan* (hereinafter, "Bankruptcy Plan").  Please see a true

and correct copy of said Order confirming the Bankruptcy Plan labeled as Exhibit "D."

43.     Pursuant to the Bankruptcy Plan, Defendant received regular monthly payments on the Debt as of an effective date of July 11, 2015. *See* Ex. "D" at ¶ 2 and pg. 8.

44.     At no time herein did Defendant petition the United States Bankruptcy Court for relief from the Automatic Stay with respect to the Debt. *See* generally Ex. "A."

45.     Each of Defendant's below-referenced communications occurred despite Defendant possessing actual knowledge of Plaintiffs' Bankruptcy Case and the resulting Automatic Stay.

46.     Additionally, each of Defendant's below-referenced communications occurred despite Defendant possessing actual knowledge of Plaintiffs' legal representation with respect to the Debt and Plaintiffs' legal representation's contact information.

47.     On or about March 31, 2017, Defendant sent a collection letter directly to Mrs. Freeman in an attempt to collect the Debt.  Please see a true and correct copy of said collection letter, labeled as Exhibit "E."

48.     On or about March 31, 2017, Defendant sent a collection letter directly to Mr. Freeman in an attempt to collect the Debt.  Please see a true and correct copy of said collection letter, labeled as Exhibit "F."

49.     On or about March 31, 2017, Defendant sent a billing statement directly to Plaintiffs in an attempt to collect the Debt.  Please see a true and correct copy of said billing statement, labeled as Exhibit "G."

50.     On or about April 1, 2017, Defendant sent *another* collection letter directly to Plaintiffs in an attempt to collect the Debt.  Please see a true and correct copy of said collection letter, labeled as Exhibit "H."

51.     On or about April 1, 2017, at approximately 9:44 a.m. EST, Defendant called Mr. Freeman's Cellular Telephone from telephone number 855.389.8502 using an ATDS, a PTDS, or an APV.

52.     Defendant made the immediately-aforementioned call in an attempt to collect the Debt directly from Plaintiffs.

53.     On or about April 1, 2017, Mr. Freeman called Defendant by telephone and spoke with one of Defendant's employees or representatives, and Mr. Freeman advised Defendant of his Bankruptcy Case, provided the Bankruptcy Case number, advised of Plaintiffs' legal representation of Plaintiffs with respect to the Debt, and provided Plaintiffs' legal representation's contact information.

54.     Despite no record activity in Plaintiffs' Bankruptcy Case on March 30, 2017, and despite Defendant's actual knowledge of the Bankruptcy Case's conversion to a Chapter 13 as well as the Bankruptcy Plan and receiving payments pursuant to the Bankruptcy Plan, Defendant's employee or representative responded to Mr. Freeman stating that a discharge was entered in Plaintiffs' Bankruptcy Case on March 30, 2017.

55.     On or about April 4, 2017, Defendant sent *another* collection letter directly to Plaintiffs in an attempt to collect the Debt.  Please see a true and correct copy of said collection letter, labeled as Exhibit "I."

56.     On or about April 7, 2017, Defendant sent *another* collection letter directly to Plaintiffs in an attempt to collect the Debt.  Please see a true and correct copy of said collection letter, labeled as Exhibit "J."

9

57.     On or about April 7, 2017, Defendant sent *another* collection letter directly to Mrs. Freeman in an attempt to collect the Debt.  Please see a true and correct copy of said collection letter, labeled as Exhibit "K."

58.     On or about April 7, 2017, Defendant sent *another* collection letter directly to Mr. Freeman in an attempt to collect the Debt.  Please see a true and correct copy of said collection letter, labeled as Exhibit "L."

59.     On or about April 11, 2017, Defendant sent *another* collection letter directly to Mrs. Freeman in an attempt to collect the Debt.  Please see a true and correct copy of said collection letter, labeled as Exhibit "M."

60.     On or about April 11, 2017, Defendant sent *another* collection letter directly to Mr. Freeman in an attempt to collect the Debt.  Please see a true and correct copy of said collection letter, labeled as Exhibit "N."

61.     On or about April 13, 2017, Defendant sent *another* billing statement directly to Plaintiffs in an attempt to collect the Debt.  Please see a true and correct copy of said billing statement, labeled as Exhibit "O."

62.     The immediately-aforementioned billing statement reflected "Regular Monthly Payment[s]" from the Bankruptcy Case trustee in accordance with the Bankruptcy Plan, and reflected recent payments in the amounts of $805.85 and $32.00 on April 12, 2017, but also asserted a "Past Due Amount" of $805.85.

63.     In aggregate, the above-referenced billing statement demanded a "Total Amount Due" of $1,611.70.  *See* Ex. "O."

64.     On or about April 14, 2017, Defendant sent *another* collection letter directly to Plaintiffs in an attempt to collect the Debt.  Please see a true and correct copy of said collection letter, labeled as Exhibit "P."

65.     On or about April 17, 2017, Defendant sent *another* billing statement directly to Plaintiffs in an attempt to collect the Debt.  Please see a true and correct copy of said billing statement, labeled as Exhibit "Q."

66.     On or about April 17, 2017, at approximately 7:38 p.m. EST, Defendant called Mr. Freeman's Cellular Telephone using an ATDS, a PTDS, or an APV.

67.     Defendant made immediately-aforementioned call in an attempt to collect the Debt directly from Plaintiffs.

68.     On or about April 19, 2017, at approximately 2:54 p.m. EST, Mr. Freeman *again* called Defendant by telephone and *again* spoke with one of Defendant's employees or representatives, wherein Mr. Freeman *again* advised of his Bankruptcy Case, provided the Bankruptcy Case number, *again* advised of Plaintiffs' legal representation of Plaintiffs with respect to the Debt, and *again* provided Plaintiffs' legal representation's contact information.

69.     Despite Defendant's actual knowledge of the Bankruptcy Case's conversion to a Chapter 13 as well as the Bankruptcy Plan and receiving regular payments pursuant to the Bankruptcy Plan, Defendant's employee or representative responded to Mr. Freeman, first asserting that Defendant had no record of Mr. Freeman being in a bankruptcy, then subsequently asserted that "on the thirtieth of March, your bankruptcy was discharged."

70.     Defendant made the immediately-aforementioned assertion despite no record activity in Plaintiffs' Bankruptcy Case on March 30, 2017, and in direct conflict with Defendant's

previous—and also inaccurate—claim that Defendant had no record of Plaintiffs' Bankruptcy Case.

71.     On or about April 20, 2017, at approximately 1:27 p.m. EST, Defendant called Mr. Freeman's Cellular Telephone using an ATDS, a PTDS, or an APV.

72.     Defendant made the immediately-aforementioned call in an attempt to collect the Debt directly from Plaintiffs.

73.     On or about April 21, 2017, at approximately 8:50 a.m. EST, Defendant called Mr. Freeman's Cellular Telephone using an ATDS, a PTDS, or an APV.

74.     Defendant made the immediately-aforementioned call in an attempt to collect the Debt directly from Plaintiffs.

75.     On or about April 21, 2017, at approximately 4:15 p.m. EST, Defendant called Mr. Freeman's Cellular Telephone using an ATDS, a PTDS, or an APV.

76.     Defendant made the immediately-aforementioned call in an attempt to collect the Debt directly from Plaintiffs.

77.     On or about April 24, 2017, at approximately 12:57 p.m. EST, Defendant called Mr. Freeman's Cellular Telephone from number 855.389.8502 using an ATDS, a PTDS, or an APV.

78.     Defendant made the immediately-aforementioned call in an attempt to collect the Debt directly from Plaintiffs.

79.     On or about April 25, 2017, at approximately 10:24 a.m. EST, Defendant called Mr. Freeman's Cellular Telephone using an ATDS, a PTDS, or an APV.

80.     Defendant made the immediately-aforementioned call in an attempt to collect the Debt directly from Plaintiffs.

81.     On or about April 25, 2017, at approximately 2:57 p.m. EST, Defendant called Mr. Freeman's Cellular Telephone using an ATDS, a PTDS, or an APV.

82.     Defendant made the immediately-aforementioned call in an attempt to collect the Debt directly from Plaintiffs.

83.     On or about April 26, 2017, at approximately 1:43 p.m. EST, Defendant's representative "Jordon" called Mr. Freeman's Cellular Telephone using an ATDS, a PTDS, or an APV.

84.     Defendant made the immediately-aforementioned call in an attempt to collect the Debt directly from Plaintiffs.

85.     Further, on the above-referenced call, Mr. Freeman advised "Jordan" that Plaintiffs' Bankruptcy Case was active for almost two years.

86.     In response, "Jordon" falsely stated Defendant had no knowledge of Plaintiffs' Bankruptcy Case.

87.     Throughout the months of April and May of 2017, Defendant repeatedly called Mr. Freeman's Cellular Telephone repeatedly using an ATDS, a PTDS, or an APV in an attempt to collect the Debt directly from Plaintiffs.

88.     Throughout the months of April and May of 2017, Defendant repeatedly called Mrs. Freeman's Cellular Telephone repeatedly using an ATDS, a PTDS, or an APV in an attempt to collect the Debt directly from Plaintiffs.

89.     On or about April 28, 2017, Mr. Freeman obtained a copy of his Equifax credit report (hereinafter, "Equifax Report"). Please see a true and correct copy of the relevant pages from the Equifax Report, labeled as Exhibit "R."

90.     The immediately-aforementioned Equifax Report correctly listed the Debt as included in Plaintiffs Bankruptcy Case. *See* Ex. "R" at p. 3.

91.     On or about April 28, 2017, Mr. Freeman obtained a copy of his TransUnion credit report (hereinafter, "TransUnion Report"). Please see a true and correct copy of the relevant pages from the TransUnion Report, labeled as Exhibit "S."

92.     Despite Plaintiffs' Bankruptcy Case, and despite Defendant reporting the Debt accurately on Mr. Freeman's Equifax Report, Defendant reported the Debt as thirty (30) days *past due* with a maximum delinquency of thirty (30) days in March 2016 in the amount of $1,600, and did not reference Plaintiffs' Bankruptcy Case. *See* Ex. "S" at pp. 3-4.

93.     Upon information and belief, as Mrs. Freeman is a co-debtor, Defendant reported the Debt as thirty (30) days *past due* with a maximum delinquency of thirty (30) days in March 2016 in the amount of $1,600, and did not reference Plaintiffs' Bankruptcy Case on Mrs. Freeman's TransUnion credit report.

94.     Defendant communicated such alleged past due amount on the Debt in Mr. Freeman's TransUnion Report in an attempt to collect the Debt from Plaintiffs.

95.     On or about April 28, 2017, Mr. Freeman obtained a copy of his Experian credit report (hereinafter, "Experian Report"). Please see a true and correct copy of the relevant pages from the Experian Report, labeled as Exhibit "T."

96.     Despite Plaintiffs' Bankruptcy Case, and despite Defendant reporting the Debt accurately on Mr. Freeman's Equifax Report, Defendant reported the Debt as *past due* as of March 2016 in the amount of $1,600, and did not reference Plaintiffs' Bankruptcy Case. *See* Ex. "T" at p. 3.

97.     Upon information and belief, as Mrs. Freeman is a co-debtor, Defendant reported the Debt as *past due* as of March 2016 in the amount of $1,600, and did not reference Plaintiffs' Bankruptcy Case on Mrs. Freeman's Experian credit report.

98.     Defendant communicated such alleged past due amount on the Debt in an attempt to collect the Debt from Plaintiffs.

99.     On or about May 2, 2017, Defendant sent *another* collection letter directly to Plaintiffs in an attempt to collect the Debt.  Please see a true and correct copy of said collection letter, labeled as Exhibit "U."

100.    On or about May 9, 2017, Defendant sent *another* billing statement directly to Plaintiffs in an attempt to collect the Debt.  Please see a true and correct copy of said billing statement, labeled as Exhibit "V."

101.    The immediately-aforementioned billing statement reflected recent payments from the Bankruptcy Case trustee in accordance with the Bankruptcy Plan in the amounts of $805.85 and $32.00 on May 8, 2017, but also asserted a "Past Due Amount" of $805.85.

102.    In aggregate, the above-referenced billing statement demanded a "Total Amount Due" of $1,611.70.  *See* Ex. "V."

103.    On or about May 16, 2017, Defendant sent *another* billing statement directly to Plaintiffs in an attempt to collect the Debt.  Please see a true and correct copy of said billing statement, labeled as Exhibit "W."

104.    On or about May 17, 2017, Defendant sent *another* collection letter directly to Plaintiffs in an attempt to collect the Debt.  Please see a true and correct copy of said collection letter, labeled as Exhibit "X."

105.     On or about June 12, 2017, Defendant sent *another* collection letter directly to Mrs. Freeman in an attempt to collect the Debt.  Please see a true and correct copy of said collection letter, labeled as Exhibit "Y."

106.     On or about June 12, 2017, Defendant sent *another* collection letter directly to Mr. Freeman in an attempt to collect the Debt.  Please see a true and correct copy of said collection letter, labeled as Exhibit "Z."

107.     On or about June 16, 2017, Defendant sent *another* billing statement directly to Plaintiffs in an attempt to collect the Debt.  Please see a true and correct copy of said billing statement, labeled as Exhibit "AA."

108.     On or about June 19, 2017, Defendant sent *another* collection letter directly to Plaintiffs in an attempt to collect the Debt.  Please see a true and correct copy of said collection letter, labeled as Exhibit "BB."

109.     At all material times herein, Defendant knew how to comply with the Automatic Stay and refrain from attempting to collect the Debt directly from Plaintiffs, as evidenced by the "Informational Statements" Defendant sent to Plaintiffs regarding the Debt on January 19, 2017, February 16, 2017, and February 17, 2017.  Please see true and correct copies of said informational statements, labeled as Composite Exhibit "CC."

110.     Plaintiffs retained Leavengood, Dauval, Boyle & Meyer, P.A., d/b/a LeavenLaw (hereinafter, "Undersigned Counsel") for the purpose of pursuing this matter against Defendant, and Plaintiffs are obligated to pay their attorneys a reasonable fee for their services.

111.     Plaintiffs have not been able, due to both professional and personal commitments, as well as the continued and increasing stress associated with the barrage of Debt collection calls, to record the specifics (as done above) of each and every call made to Plaintiffs.  Plaintiffs assert,

however, that the above-referenced calls are but a sub-set of the calls made in violation of the FCCPA and the TCPA, and Plaintiffs are aware that Defendant made additional calls not specifically itemized above. Further, Defendant is in the best position to determine and ascertain the number and methodology of calls made to Plaintiffs.

112.   As a direct result of Defendant's actions, Plaintiffs suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, confusion, and loss of sleep, believing that the hiring of an attorney for representation with respect to the Debt was wholly ineffective, that filing for bankruptcy and the resulting Automatic Stay were wholly ineffective, that regular monthly payments pursuant to the Bankruptcy Plan were wholly ineffective, and that Plaintiffs simply must endure Defendant's frequent and repeated direct debt collection attempts.

113.   Florida Statutes, Section 559.77, provides for the award of $1,000.00 statutory damages, actual damages, punitive damages, and an award of attorneys' fees and costs to Plaintiffs, should Plaintiffs prevail in this matter against Defendant.

114.   United States Code, Title 47, Section 227(b)(3) provides for the award of $500.00 or actual damages, whichever is greater, for each telephone call made using any automatic telephone dialing system or an artificial or pre-recorded voice to Plaintiffs' Cellular Telephones in violation of the TCPA or the regulations proscribed thereunder.

115.   Additionally, the TCPA, Section 227(b)(3) allows the trial court to increase the damages up to three times, or $1,500.00, for each telephone call made using any automatic telephone dialing system or an artificial or prerecorded voice to Plaintiffs' Cellular Telephones in willful or knowing violation of the TCPA or the regulations proscribed thereunder.

116.    As of the date of this complaint, Defendant has not initiated a law suit in an effort to collect the Debt.  Likewise, no final judgment regarding the Debt has been obtained by, or transferred to, Defendant.

**COUNT ONE:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORIDA STATUTES, SECTION 559.72(7)**

Plaintiffs re-allege paragraphs eighteen (18) through one hundred sixteen (116) as if fully restated herein and further state as follows:

117.    Defendant is subject to, and violated the provisions of, Florida Statutes, Section 559.72(7) by collecting a consumer Debt from Plaintiffs through means which can reasonably be expected to abuse or harass Plaintiffs.

118.    Specifically, despite possessing actual knowledge of Plaintiffs' Bankruptcy Case and Automatic Stay, receiving Bankruptcy Plan payments, possessing actual knowledge of Plaintiffs' legal representation with respect to the Debt and possessing Plaintiffs' legal representation's contact information, Defendant directly sent Plaintiffs *at least* fifteen (15) collection letters, and *at least* six (6) billing statements in an attempt to collect the Debt.

119.    Additionally, despite possessing the above-referenced knowledge Defendant directly called Mr. Freeman's Cellular Telephone *at least* ten (10) times, and directly called Mrs. Freeman's Cellular Telephone repeatedly during the months of April and May of 2017 using an ATDS, PTDS, or an APV in an attempt to collect the Debt.

120.    Moreover, despite possessing actual knowledge of Plaintiffs' Bankruptcy Case and Automatic Stay, and receiving Bankruptcy Plan payments, Defendant reported the Debt as *past due* on Plaintiffs' Trans Union and Experian credit reports in an attempt to collect the Debt.

121.    Defendant's conduct served no purpose other than to annoy, force, coerce, harass, frighten, embarrass, and/or humiliate Plaintiffs into paying the Debt, despite Plaintiffs' Bankruptcy Case and the protections of the Automatic Stay, and despite Defendant receiving regular monthly payments on the Debt pursuant to the Bankruptcy Plan.

122.    Defendant's willful and flagrant violation of, *inter alia*, the Florida Consumer Collections Practices Act as a means to collect a Debt, constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Section 559.72(7).

123.    As a direct and proximate result of Defendant's actions, Plaintiffs sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT TWO:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORIDA STATUTES, SECTION 559.72(9)**

Plaintiffs re-allege paragraphs eighteen (18) through one hundred sixteen (116) as if fully restated herein and further state as follows:

124.    Defendant is subject to, and violated the provisions of, Florida Statutes, Section 559.72(9) by attempting to collect the Debt with knowledge that the Debt is not legitimate or asserting the existence of a legal right with the knowledge that the right does not exist.

125.    Defendant possessed actual knowledge of Plaintiffs' Bankruptcy Case and the accompanying Automatic Stay. *See* Exs. "A" and "C."

126.    Despite possessing such knowledge, Defendant repeatedly attempted to collect the Debt directly from Plaintiffs in violation of the Automatic Stay.

127.    Specifically, Defendant directly sent Plaintiffs *at least* fifteen (15) collection letters and *at least* six (6) billing statements in an attempt to collect the Debt.

128.    Additionally, Defendant reported the Debt as *past due* on Plaintiffs' Trans Union and Experian credit reports in an attempt to collect the Debt from Plaintiffs.

129.    Moreover, Defendant directly called Mr. Freeman's Cellular Telephone *at least* ten (10) times, and directly called Mrs. Freeman's Cellular Telephone repeatedly during the months of April and May of 2017 using an ATDS, PTDS, or an APV in an attempt to collect the Debt.

130.    Defendant knowingly and falsely asserted the right to collect the Debt directly from Plaintiffs despite Plaintiffs' Bankruptcy Case and the Automatic Stay, and despite already receiving payments pursuant to the Bankruptcy Plan.  Defendant knew it did not possess such right.

131.    As a direct and proximate result of Defendant's actions, Plaintiffs sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT THREE:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORIDA STATUTES, SECTION 559.72 (18)**

Plaintiffs re-allege paragraphs eighteen (18) through one hundred sixteen (116) as if fully restated herein and further states as follows:

132.    Defendant is subject to, and violated the provisions of, Florida Statutes, Section 559.72(18) by communicating directly with Plaintiffs after receiving actual notice that Plaintiffs were represented by legal counsel with respect to the Debt.

133.    Defendant possessed actual notice of Plaintiffs' Bankruptcy Case and legal counsel's representation of Plaintiffs with respect to the Debt.  *See* Exs. "A"-"D."

134.    Specifically, Defendant received actual notice of legal counsel's representation of Plaintiffs from Plaintiffs' Bankruptcy Case via the Notice of Conversion of Case to Chapter 13, and Defendant demonstrated its actual knowledge of Plaintiffs' Bankruptcy Case, Plaintiffs' legal

counsel's representation of Plaintiffs with respect to the Debt, and said counsel's contact information by filing an Objection by Creditor to Confirmation of Plan in Plaintiffs' Bankruptcy Case. *See* Ex. "C."

135.   Additionally, Defendant repeatedly received further actual notice of Plaintiffs' Bankruptcy Case, Plaintiffs' legal counsel's representation of Plaintiffs with respect to the Debt, and said counsel's contact information each time Mr. Freeman informed Defendant of Plaintiffs' Bankruptcy Case, provided the Bankruptcy Case number, and advised of Plaintiffs' legal counsel's contact information with respect to the Debt.

136.   Despite possessing the above-referenced knowledge, Defendant directly sent Plaintiffs *at least* fifteen (15) collection letters, *at least* six (6) billing statements, directly called Mr. Freeman's Cellular Telephone *at least* ten (10) times, directly called Mrs. Freeman's Cellular Telephone continuously during the months of April and May of 2017 using an ATDS, PTDS, or an APV, and reported the Debt as *past due* on Plaintiffs' Trans Union and Experian credit reports, all in an attempt to collect the Debt directly from Plaintiffs.

137.   As a direct and proximate result of Defendant's actions, Plaintiffs sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT FOUR:**
**TELEPHONE CONSUMER PROTECTION ACT –**
**VIOLATION OF 47 UNITED STATES CODE, SECTION 227(b)(1)(A)**

Plaintiffs re-allege paragraphs eighteen (18) through one hundred sixteen (116) as if fully restated herein and further states as follows:

138.   Defendant is subject to, and violated the provisions of, 47 United States Code, Section 227(b)(1)(A) by using an automatic telephone dialing system, a predictive telephone

dialing system, or an artificial or pre-recorded voice to call a telephone number assigned to a cellular telephone service without Plaintiffs' prior express consent.

139.   Specifically, at no time herein did Defendant possess Plaintiffs' prior express consent to call Plaintiffs' Cellular Telephones using an ATDS, a PTDS, or an APV.

140.   If Defendant contends it nonetheless possessed Plaintiffs' prior express consent, Plaintiffs revoked such consent the moment—and each subsequent time—Defendant received notice of the Bankruptcy Case, the Notice of Conversion of Case to Chapter 13, and the Bankruptcy Plan and Automatic Stay.

141.   Despite lacking Plaintiffs' prior express consent, Defendant called Mr. Freeman's Cellular Telephone *at least* ten (10) times using an ATDS, a PTDS, or an APV, and further called Mrs. Freeman's Cellular Telephone repeatedly during the months of April and May of 2017 using an ATDS, a PTDS, or an APV in its attempts to collect the Debt.

142.   As Defendant possessed actual knowledge of Plaintiffs' Bankruptcy Case—demonstrated by Defendant's filings in Plaintiffs' Bankruptcy Case and receipt of Bankruptcy Plan payments from the trustee—and as Plaintiffs revoked prior express consent prior to Defendant making calls to Plaintiffs' Cellular Telephones as a result of the Automatic Stay, Defendant's calls constitute numerous and multiple knowing and/or willful violations of the TCPA.

143.   As a direct and proximate result of Defendant's conduct, Plaintiffs suffered:

      a.   The periodic loss of their Cellular Telephone service;

      b.   Lost material costs associated with the use of peak time Cellular Telephone minutes allotted under their cellular telephone service contracts; and

c.      Stress, anxiety, loss of sleep, and deterioration of relationships, both personal and professional, as a result of the repeated willful and knowing calls placed in violation of the TCPA.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendant's conduct, Plaintiffs respectfully request against Defendant an entry of:

a.      Judgment against Defendant declaring that Defendant violated the FCCPA and the TCPA;

b.      Judgment against Defendant for maximum statutory damages for violations of the FCCPA;

c.      Judgment against Defendant for statutory damages in the amount of $500.00 for each of Defendant's telephone calls that violated the TCPA;

d.      Judgment against Defendant for treble damages in the amount of an additional $1,000.00 for each telephone call that violated the TCPA for which Defendant acted knowingly or willingly—or both;

e.      Judgment providing injunctive relief, prohibiting Defendant from further engaging in conduct that violates the FCCPA and the TCPA;

f.      Actual damages in an amount to be determined at trial;

g.      Punitive damages in an amount to be determined at trial;

h.      An award of attorneys' fees and costs; and

i.      Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues triable by right.

23

**SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE**

Plaintiffs hereby give notice to Defendant and demand that Defendant and its affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**LEAVENLAW**

/s/ *Aaron M. Swift*
☐ **Ian R. Leavengood, Esq., FBN 0010167**
[X] **Aaron M. Swift, Esq., FBN 093088**
☐ **Gregory H. Lercher, Esq., FBN 0106991**
☐ **Sara W. Severini, Esq., FBN 0115637**
Northeast Professional Center
3900 First Street North, Suite 100
St. Petersburg, FL 33703
Phone: (727) 327-3328
Fax: (727) 327-3305
consumerservice@leavenlaw.com
aswift@leavenlaw.com
glercher@leavenlaw.com
sseverini@leavenlaw.com
*Attorneys for Plaintiffs*

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF FLORIDA          )
                          )
COUNTY OF _____   )

Plaintiff Paul Freeman, having first been duly sworn and upon oath, deposes and says as follows:

1. I am a Plaintiff in this civil proceeding.

2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

6. Each and every exhibit which has been attached to this Complaint, if any, is a true and correct copy of the original.

7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated any exhibits, except that some of the attached exhibits, if any, may contain some of my own handwritten notations.

_____
Paul Freeman

Subscribed and sworn to before me
this _13_ day of _June_, 2017.

_____ Ronald Pirrick
Notary Public

My Commission Expires: 11-3-18        Proof of I.D.: _FL DL_

Ronald Parrick
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF173680
Expires 11/3/2018

25

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF FLORIDA          )
                          )
COUNTY OF _____ )

Plaintiff Johanna Freeman, having first been duly sworn and upon oath, deposes and says as follows:

1. I am a Plaintiff in this civil proceeding.

2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

6. Each and every exhibit which has been attached to this Complaint, if any, is a true and correct copy of the original.

7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated any exhibits, except that some of the attached exhibits, if any, may contain some of my own handwritten notations.

_____
Johanna Freeman

Subscribed and sworn to before me
this _12_ day of _June_, 2017.

_____ Ronald Perrick
Notary Public

My Commission Expires: 11-13-18          Proof of I.D.: _FL DL_



Ronald Perrick
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF173680
Expires 11/3/2018

26